AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original  ☐ Duplicate Original

**LODGED**
CLERK, U.S. DISTRICT COURT

06/17/2020

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DM _____ DEPUTY

**FILED**
CLERK, U.S. DISTRICT COURT

June 17, 2020

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ VM _____ DEPUTY

# UNITED STATES DISTRICT COURT

for the

Central District of California

United States of America

v.

RUIXUE SHI,

Defendant

Case No.   2:20-mj-02807

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the dates of November 2015 and July 2018, in the County of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

N/A
_____
*Complainant's signature*

Patrick Feders, FBI Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   June 17, 2020

_____
*Judge's signature*

City and state:   Los Angeles, California

Hon. Michael R. Wilner, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT

I, PATRICK FEDERS, being duly sworn, declare and state as follows:

## I.   INTRODUCTION

1.    I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since March 2016.  Since October 2016, I have been assigned to the Complex Financial Crimes squad of the Los Angeles Field Office, where I specialize in investigating allegations of securities fraud, insider trading, wire fraud, mail fraud, and money laundering. I have investigated and participated in several white-collar fraud investigations and have also participated in the execution of arrest and search warrants.  Prior to my current assignment, I completed approximately 21 weeks of training in investigative techniques at the FBI Academy in Quantico, Virginia.

2.    I received a Bachelor of Business Administration with Honors from Loyola University Chicago.  Prior to joining the FBI, I worked in public accounting for approximately eight and one-quarter years.  I am a Certified Public Accountant registered in Illinois and have been so since 2009.

3.    In addition to my formal training and personal experience, I have learned from and worked alongside numerous senior FBI agents with years of experience in various criminal investigations including, but not limited to, corporate fraud, mail fraud, wire fraud, securities fraud, and insider trading. Throughout my experiences with these senior agents, I have received guidance, training, and hands-on experience in various

investigative techniques including, but not limited to, interviewing, surveillance, financial analysis, and other investigative techniques, including with respect to the identification and tracing of illicit proceeds.

## II. PURPOSE OF AFFIDAVIT

4.    This affidavit is made in support of a criminal complaint against, and arrest warrant for, RUIXUE SHI, also known as "Serena Shi" ("SHI"), for a violation of 18 U.S.C. § 1343 (Wire Fraud).

5.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## III. SUMMARY OF PROBABLE CAUSE

6.    Between in or around November 2015 and in or around July 2018, SHI solicited investments for a condominium and hotel complex called the Hyde Resorts and Residences Coachella Valley (the "Hyde Development").  To solicit investments, SHI falsely told investors that she had purchased the land necessary to build this complex in Coachella, California; that she had acquired the necessary approvals from the City of Coachella; and that their investments would be used to finish the Hyde

Development.  SHI raised approximately $21.6 million from
victims based primarily in China through wire transfers from
bank accounts in China.  SHI then misappropriated a significant
portion of the investor funds to pay for her lavish living
expenses, including millions of dollars in payments to luxury
travel and styling agencies.

### IV. <u>STATEMENT OF PROBABLE CAUSE</u>

7.    Based on witness interviews I have conducted, my
review of documents obtained from third parties, reports of
interviews conducted by other law enforcement officers,
conversations with other law enforcement officers, and publicly
filed documents, I know the following:

**A.    SHI and Global House Buyer**

8.    SHI is a Chinese citizen who resides in Los Angeles
County, California.  From witness interviews I have conducted
and reports I have reviewed, I know that SHI represented herself
to possible investors as the president and owner of a company
called GLOBAL HOUSE BUYER ("GHB"), a real estate development
company that was based in China, and as the owner of HYDE MORGAN
DEVELOPMENT, LLC ("HYDE MORGAN").

9.    In September 2017, SHI was selected for secondary
screening when she arrived at the Los Angeles International
Airport ("LAX"), and was interviewed by United States Customs
and Border Protection officers.  During the interview, SHI
identified herself as the General Manager of GHB.  SHI told the
interviewing officers that GHB was located in China, but had an
office in Los Angeles, California.  SHI further stated that she

3

previously worked at, and now had contacts at, the New York
Immigration Fund, an approved sponsor of the EB-5 Immigrant
Investor Program (the "EB-5 Program"), which I know to be a
federal program administered by the United States Citizenship
and Immigration Services that allows foreign investors to secure
a United States visa by investing a large sum of money to
finance a business in the United States that would employ
American workers.  The threshold for investment in the EB-5
Program is now $900,000, but in 2016 it was as low as $500,000.

10.  According to public documents filed with the
California Secretary of State ("CA SOS"), SHI is the registered
agent for service of process of the following California Limited
Liability Companies bearing the name "GHB": GHB Development,
LLC; GHB Don Juan Villas, LLC; and GHB Golden Oaklein, LLC.  CA
SOS records also show that SHI is the registered agent for
service of process for and Chief Executive Officer of a
California Limited Liability Company called Hyde Morgan
Development, LLC (HYDE MORGAN).  The addresses provided for
these entities on the CA SOS documents are all associated with
SHI in public records databases that I have reviewed.

11.  Bank records obtained during the course of this
investigation show that SHI controlled a number of bank accounts
with Wells Fargo (collectively, the "SHI WF accounts"),
including the following:

a.    A personal checking account in the name of
"Ruixue Shi," ending in 0431 (the "WF 0431 account");

b.    A business checking account in the name of GHB Development LLC, ending in 7317 (the "WF 7317 account");

c.    A business checking account in the name of Coachella Valley Hotel LLC, ending in 2940 (the "WF 2940 account");

d.    A business checking account in the name of Coachella Valley Hotel LLC, ending in 1713 (the "WF 1713 account");

e.    A business checking account in the name of Hyde Morgan Development LLC, ending in 0857 (the "WF 0857 account");

f.    A business checking account in the name of Hyde Morgan Development LLC, ending in 9468 (the "WF 9468 account"); and

g.    A business checking account in the name of Hyde Morgan Development LLC, ending in 9252 (the "WF 9252 account").

**B.    SHI Solicits $21.6 Million in Investment in the Hyde Development Through Material False Statements and Omissions of Fact**

12.    From public record searches, I know that "Hyde" is a luxury hotel and nightlife brand owned by SBE Entertainment ("SBE"), a privately held lifestyle hospitality company based in Los Angeles, California, that manages and operates hotels, restaurants, and nightclubs.  Dakota Development is a real estate development subsidiary of SBE that develops SBE's hotel projects, including projects under the Hyde brand.

13.    According to witnesses who have provided statements to law enforcement officers, in November 2015, SHI began to solicit investments in a GHB project that would be located in Coachella

Valley, California.  SHI told the prospective investors that GHB
had purchased a 47-acre parcel of land in Coachella and was
developing a 207-unit luxury condominium and hotel complex under
the Hyde brand name in connection with Dakota Development,[1] which
was to have a total of 95,000 square feet of on-site conference
facilities, a pool complex, a spa, a fitness center, and other
site amenities.  The complex was to be called Hyde Resorts and
Residences Coachella Valley (the Hyde Development), and GHB
would be developing the complex and soliciting investments
through HYDE MORGAN.

14.  Witnesses described how SHI contacted them as
potential investors for the Hyde Development by giving sales
presentations at hotels, releasing radio advertisements, and
soliciting investments over forums on WeChat, a Chinese multi-
purpose messaging, social media, and mobile payment application.
SHI targeted the Chinese population in her marketing materials,
the majority of which was in the Chinese language.  Some
witnesses have described attending a sales presentation that SHI
gave in Beijing in November 2015, during which she was
accompanied by the Managing Director of United States operations
for GHB ("GHB Director"), representatives from Dakota
Development, the Coachella City Manager, and the Coachella
Economic Development Manager.[2]

---

[1] According to information from the Managing Director of
United States operations for GHB, GHB signed a letter of intent
with SBE for SBE to manage the hotel under the brand name Hyde.

[2] According to travel records I obtained, SHI traveled from
LAX to the Beijing Capital International Airport ("PEK") on

15. From witness statements and GHB marketing materials I have reviewed, I know that SHI, either directly or through GHB / HYDE MORGAN marketing materials, made the following representations about the Hyde Development to investors while soliciting investments:

a. The Hyde Development was scheduled to begin construction in 2017. Investors would be purchasing a Hyde Development condominium unit, which ranged in price between $400,000 and $700,000. Investors would be required under the Hyde Development contracts to pay 40% of the total purchase price upfront as a down payment, and SHI told investors that GHB would help them finance the remaining balance from banks in the United States when the project was fully completed.

b. Under the terms of the contracts provided to the investors, HYDE MORGAN would lease back the units from the investors at the rate of 1% of the unit purchase price per month as rent for a specified lease term of either 5, 10, 15, or 20 years. After the lease term had expired, the contract dictated that HYDE MORGAN would have the option to buy back the unit from the investors at specified prices.

c. Chinese investors who invested in the Hyde Development would be eligible to obtain visas through the EB-5 Program. For example, victim L.C. told law enforcement officers that SHI told her personally that SHI would procure a long-term

_____

October 17, 2015, and returned on December 16, 2015. The GHB Director, Coachella City Manager, and Coachella Economic Development Manager each traveled from the United States to PEK on November 19, 2015, and returned several days later.

United States visa for L.C. through the EB-5 Program if L.C. invested $500,000 in the Hyde Development.

        d.   SHI told investors to make their payments to GHB in multiple installments of slightly less than $50,000.

16.   Between in or around November 2015 and in or around December 2017, bank records from Wells Fargo show that approximately $21.6 million was deposited into the SHI WF accounts.  These deposits were made by wire transfers from individuals, the vast majority of which originated from banks located in China.  Most of the deposits were in amounts slightly below $50,000.  For example, the Wells Fargo bank records show the following foreign wire transfers made from banks in China to GHB-related Wells Fargo accounts that SHI controlled:

| DATE | VICTIM | WIRE TRANSFER |
|------|--------|---------------|
| 8/23/2016 | C.L | Wire transfer by victim C.L. of approximately $43,005 from a bank account in China to the WF 2940 account. |
| 10/27/2016 | Y.J.R. | Wire transfer by victim Y.J.R. of approximately $50,000 from a bank account in China to the WF 2940 account. |
| 10/28/2016 | F.D. | Wire transfer by victim F.D. of approximately $43,000 from a bank account in Hong Kong to the WF 2940 account. |
| 11/2/2016 | Z.N. | Wire transfer by victim Z.N. of approximately $38,758 from a bank account in China to the WF 2940 account. |
| 11/17/2016 | F.D. | Wire transfer by victim F.D. of approximately $50,000 from a bank account in Hong Kong to the WF 2940 account. |
| 12/12/2016 | S.S.W. | Wire transfer by victim S.S.W. of approximately $39,985 from a bank account in China to the WF 1713 account. |

17.   Based on witness statements and the Hyde Development contracts and marketing materials I have reviewed, there is probable cause to believe that SHI made material false statements and omissions of fact to the investors while soliciting their investments in the Hyde Development.  For example:

a.   SHI represented to the investors that their funds would be used to fund, and as an investment in, the Hyde Development.  In truth, however, as discussed below, infra Section IV.C, SHI used a significant portion of the investors' funds to pay for her own lavish lifestyle.

b.   SHI concealed the material information that she would be using investor funds for her own personal expenses when she was soliciting investments.

c.   SHI represented to investors that GHB had purchased the 47-acre lot of land in Coachella Valley where the Hyde Development was to be built.  In truth, however, SHI purchased only 20 acres of the property.  In a December 6, 2017 email to a victim-investor, the Development Services Director of the City of Coachella stated that SHI had been "unable to close escrow on the 27-acre portion of the property that fronts on Vista Del Norte street."  Public records and escrow documents obtained during the course of this investigation similarly show that while SHI purchased the approximately 20-acre property located at 45260 Harrison Street in Coachella, California, she never purchased the adjacent property of approximately 27 acres on Vista Del Norte Street.

   d.   SHI represented to investors that GHB had obtained the required city development approvals for the Hyde Development, which, according to the pre-application for the Hyde Development, included re-zoning of the two parcels of land that SHI had purportedly purchased.  In truth, however, public records show that, as of June 2020, neither parcel has been re-zoned per the city's requirements for the Hyde Development.  In addition, in the same December 6, 2017 email described above, supra ¶ 17.c, the Coachella Development Services Director stated that the City of Coachella was "hopeful that the developer [GHB] [would] close escrow soon and that the project [would] proceed in getting its development approvals in early 2018.  However, that depends on whether GHB is successful in getting title to the entire property and working closely with their design team to get all required City approvals."

   18.  In or around early 2017, certain victim-investors attempted to contact SHI to determine the status of the Hyde Development after hearing that GHB was no longer in operation in the United States.  Some victim-investors began to demand refunds of SHI of their initial investments, and SHI provided partial refunds to certain victims if they agreed to sign a "Confidential Termination Agreement and General Release" that purported to prevent the victims from disclosing that they received a partial refund.[3]  In an apparent attempt to placate the victim-investors who had begun asking questions about the

_____

   [3] Based on my review of the bank records and witness statements, I believe that the majority of investors never received any refund.

10

Hyde Development, and to conceal her fraud from them, SHI made additional false statements.  For example, witnesses described and provided copies of communications they received from GHB in early 2017.  In these communications, GHB claimed that the Hyde Development had broken ground, and GHB provided photographs of what purported to be construction efforts underway, including the following:



In truth, from conversations with law enforcement officers who have visited the lot of land in Coachella where the Hyde Development was supposed to be built, and from the correspondence from Coachella city officials described above, supra ¶¶ 17.c-d, I know that GHB never began construction on the Hyde Development and, in fact, never even purchased the entire plot of land where the Hyde Development was to be built.

**C.   SHI Uses the Investor Funds to Pay for Her Lavish Lifestyle**

19.   After victim-investors began to deposit money into the SHI WF accounts, Wells Fargo records for these accounts show that SHI transferred the victims' funds repeatedly across the SHI WF accounts and then misappropriated a significant amount of the victims' funds for her own personal expenses.  For example, documents from Wells Fargo show the following payments from the SHI WF accounts that were used for SHI's personal expenses:

a.   Approximately 29 payments from the WF 7317 account, the WF 2940 account, the WF 0857 account, and the WF 9252 account, totaling approximately $2.2 million, to Element Lifestyle, LLC, a company that provides luxury travel and concierge services;

b.   Approximately nine payments from the WF 7317 account and the WF 2940 account, totaling approximately $787,800, to Deanna Zaccari Lifestyle Design, a full-service styling agency in Beverly Hills, California;

c.   A payment of $294,498.65 from the WF 2940 account to Downtown L.A. Mercedes-Benz, to purchase two Mercedes Benz cars: a 2016 Mercedes G550 and a 2017 Mercedes GTS;

d.   A payment of approximately $132,995 from the WF 2940 account to Valentino USA, Inc., a high-end clothing designer; and

e.   Numerous charges from the WF 0431 account and the 0857 account, totaling hundreds of thousands of dollars, on

clothes, restaurants, and hotels in Beverly Hills, France, Thailand, and China.

20. Based on my review of a financial analysis conducted by an FBI forensic accountant of the SHI WF accounts into which the victim funds were deposited, I know that the approximately $21.6 million in victim funds deposited into these accounts comprised the vast majority of the funds in these accounts. All of the SHI WF accounts had a minimal or zero beginning balance before the victim-investor funds began to be deposited, and the non-victim funds being deposited into these accounts were minimal compared to the amount of victim funds being deposited. As a result, the personal expenses described above, supra ¶ 19, could only have been paid for with the victim-investor funds.

* * * *

21. Based on the above information, there is probable cause to believe that SHI made material false statements and omissions of fact to solicit investments in the Hyde Development and that she misappropriated the victims' investments in the Hyde Development for her own personal expenses.

//
//
//
//
//
//
//
//

## V.  <u>CONCLUSION</u>

22.  For all the reasons described above, there is probable cause to believe that SHI violated 18 U.S.C. § 1343 (Wire Fraud).

N/A

_____
Patrick Feders, Special Agent
Federal Bureau of
Investigation

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 17th day of
June, 2020.

_____
HONORABLE MICHAEL R. WILNER
UNITED STATES MAGISTRATE JUDGE